

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

MATTHEW NIX and EARL McCOY,

        Defendants.
_____

**DECISION AND ORDER**

6:14-CR-06181 EAW

Defendants Matthew Nix and Earl McCoy ("Defendants") were charged in a Third Superseding Indictment returned on January 5, 2017, with 12 counts alleging violations of the Hobbs Act, 18 U.S.C. § 1951(a), and related firearms and narcotics charges, all in connection with a spree of home invasions during 2014. (Dkt. 165). Trial commenced on February 13, 2017, and concluded on March 17, 2017, with the jury convicting Defendants on all 12 counts. (Dkt. 229; Dkt. 266; Dkt. 267). Sentencing is scheduled for July 12, 2017. (Dkt. 265).

Presently before the Court are the Government's motions to quash (Dkt. 272; Dkt. 279) various subpoenas served by Defendants purportedly pursuant to Fed. R. Crim. P. 17, following return of the jury verdict. With no prior Court approval, Defendants arranged to serve nine separate subpoenas endorsed with the signature of the Clerk of the Court, making the subpoenas returnable at the undersigned's Chambers on random dates and times unilaterally selected by defense counsel. Because Defendants have failed to

comply with both the procedural and substantive requirements of Rule 17(c), the Government's motions to quash are granted.

## THE POST-VERDICT SUBPOENAS ISSUED BY DEFENDANTS

On March 28, 2017, the Government filed a motion to quash a subpoena served by defendant Earl McCoy ("McCoy") on FBI Special Agent Matthew Allen, the case agent who was present at the Government's table during the trial. (Dkt. 272). The subpoena, signed by the Clerk of Court, purported to command Agent Allen to appear at the undersigned's Chambers on March 29, 2017, at 10:00 AM, and to produce at that time and place the following documents:

> All results from background checks, DCJS reports, NCIC reports, FBI reports criminal reports, "rap sheets", or any other data, reports or other records concerning the panel of prospective jurors summoned for jury selection in the trial of "***United States vs. Matthew Nix and Earl McCoy***", criminal action No. 14-CR-6181 on the 13th day of February, 2017. If no such of the foregoing exists, or have [sic] been destroyed, please provide in the alternative a sworn statement so stating and a list of those items which have been destroyed. Also, please provide a statement providing the NCIC, DCJS and/or FBI user name of Special Agent Matthew Allen, or the individual who obtained the records with respect to "T.P."[1] on or about February 13, 2017.

(Dkt. 282-1). In support of its motion to quash, the Government argues that the subpoena was issued in violation of Fed. R. Crim. P. 17, and it also argues that the subpoena sought documentation outside the scope of Fed. R. Crim. P. 16 and invaded the Government's

---

[1] "T.P." refers to a prospective juror in this case, who was excused pursuant to a peremptory challenge exercised by the Government after it was revealed that the prospective juror had been previously convicted of a felony, which that juror failed to disclose in response to the Court's questions during voir dire. (Dkt. 281).

mental processes and work product. (Dkt. 282 at 2-4).² The Court granted the Government's request to stay compliance with the subpoena until the motion to quash was resolved (Dkt. 273), and a status conference was held on March 29, 2017.

At the status conference, it was revealed that a number of additional subpoenas had been served on behalf of defendant Matthew Nix ("Nix") following the return of the jury verdict. Nix's counsel was directed to provide the Court and the Government with copies of any post-verdict subpoenas, and the Court set a deadline of March 31, 2017, for the Government to file any additional motion to quash directed to the additional subpoenas. (Dkt. 274).

In accordance with this schedule, the Government filed a motion to quash the additional eight subpoenas served on behalf of Nix (Dkt. 279), as follows:

1. Subpoena directed to Facebook, Inc. (Dkt. 279-1 at 5-7), returnable to the undersigned's Chambers on March 29, 2017, at 9:30 AM, seeking, in sum and substance:

    (a) material related to the Instagram Account "its_jusdifferent_" (My Plan B Makes Plan A Work), during the time period of the trial in this case;

    (b) any subpoena or communication from the FBI, U.S. Attorney's Office, or other governmental entity, in relation to the Instagram accounts "1) its_jusdifferent_ 2) k_thebad1 3) meech_iz_holdan";

    (c) data or metadata relating to any profile name change of the Instagram account "its_jusdifferent_";

---

² The Government also argued that the subpoena was invalid because it asked Agent Allen to provide sworn testimony, in essence seeking the equivalent of civil interrogatories. (Dkt. 282 at 4). The Court agrees that Fed. R. Crim. P. 17 does not authorize the seeking of sworn testimony in written form, as requested in the subpoena directed to Agent Allen and some of the other subpoenas at issue.

(d) any subpoena or communication from the FBI, U.S. Attorney's Office, or other governmental entity, in relation to the Facebook accounts "Meech IZ Holdan" and "Jecovius Barnes."

2. Subpoena directed to the New York State Division of Criminal Justice Services (*id.* at 9-10), returnable to the undersigned's Chambers on March 23, 2017, at 8:30 AM, seeking, in sum and substance, documents concerning any records search on February 13, 2017, concerning excused prospective juror T.P., and if no such inquiry or records request was made, confirmation of the same.

3. Subpoena directed to the FBI (*id.* at 12-13), returnable to the undersigned's Chambers on March 23, 2017, at 8:30 AM, seeking, in sum and substance, documents concerning any records search on February 13, 2017, concerning excused prospective juror T.P.; and if no such inquiry or records request was made, confirmation of the same.

4. Subpoena directed to the Seneca County Jail (*id.* at 15-16), returnable to the undersigned's Chambers on March 23, 2017, at 8:30 AM, seeking, in sum and substance, any records of jail phone calls, including audio recordings, and correspondence involving Clarence Lambert while housed at that facility in 2014 through 2015, and any records of requests by way of subpoena or search warrant for the same.

5. Subpoena directed to T-Mobile USA, Inc. (*id.* at 18-19), returnable to the undersigned's Chambers on March 29, 2017, at 8:30 AM, seeking, in sum and substance, communications with the FBI, U.S. Attorney's office, or other governmental agency, concerning four separate telephone numbers.

6. Subpoena directed to Verizon (*id.* at 21-22), returnable to the undersigned's Chambers on March 31, 2017, at 8:30 AM, seeking, in sum and substance, communications with the FBI, U.S. Attorney's office, or other governmental agency, concerning six separate telephone numbers.

7. Subpoena directed to AT&T (*id.* at 24-25), returnable to the undersigned's Chambers on March 29, 2017, at 8:30 AM, seeking, in sum and substance, communications with the FBI, U.S. Attorney's office, or other governmental agency, concerning one telephone number.

8. Subpoena directed to Sprint (*id.* at 27-28), returnable to the undersigned's Chambers on March 31, 2017, at 8:30 AM, seeking, in sum and substance, communications with the FBI, U.S. Attorney's office, or other governmental agency, concerning one telephone number.

(Dkt. 283-1). Before the status conference on March 29, 2017, the Court had received responses to two of the above subpoenas, from the New York State Division of Criminal Justice Services and the Seneca County Sheriff (referenced above at numbers 2 and 4). Those responses are what caused the Court to question defense counsel further at the status conference and learn that additional subpoenas had been served, with no prior Court approval. In view of the pending motions, the Court has not released the responses received to the identified two subpoenas. No further responses have been received by the Court. In addition, in response to the Government's request, the Court stayed compliance with the subpoena, identified above at number 3, that was issued by Nix to the FBI. (Dkt. 280). Defendants then served their papers in opposition to the motions to quash on April 6 and 7, 2017. (Dkt. 285; Dkt. 288).

## SUBPOENAS DURING TRIAL

Before addressing the current dispute pending before the Court, it is necessary to provide some context to the use of subpoenas in the trial—particularly the practice engaged in by counsel for Nix. This is not the first time that issues have arisen in this case with respect to subpoenas served by defense counsel. Previously, Facebook, Inc. and Instagram LLC moved to quash two subpoenas served by Nix, and the Court granted that motion on the ground that the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*, does not permit a defendant in a criminal case to subpoena the content of a Facebook or Instagram account. (Dkt. 240).

In addition, Nix filed several motions in advance of and during the trial seeking subpoenas. (*See* Dkt. 187 (seeking subpoena for jail calls involving Nix at Yates County Jail, subpoena for Facebook posts of Kalyn Camacho, and a subpoena for records involving a traffic stop of Nix on October 7, 2014); Dkt. 191 (seeking subpoena for jail calls involving Nix at Livingston County Jail, and subpoena for Facebook account of Jecovious Barnes from September 1, 2014, until November 1, 2014); Dkt. 208 (seeking subpoena for 911 calls and a U.S. Army investigation, all related to Norman Sandoval); Dkt. 227 (seeking subpoena for documents concerning U.S. Army investigation of Norman Sandoval); Dkt. 256 (seeking to compel compliance with subpoenas addressed to Rochester City Police)). The Court granted Nix's requests for subpoenas in part and denied the requests in part. (Dkt. 201; Dkt. 224; Dkt. 234; Dkt. 259).

By the Court's estimation, Defendants served in excess of a dozen subpoenas in this case, most without judicial approval. Rule 17 ordinarily does not require the Court's approval for the issuance of a subpoena made returnable during trial. *United States v. Vo*, 78 F. Supp. 3d 171, 178 (D.D.C. 2015) ("Rule 17 first creates a general rule: Subpoenas are issued without the court's involvement when they command the recipient's presence and possibly the production of documents at a particular hearing."); *United States v. Beckford*, 964 F. Supp. 1010, 1015 (E.D. Va. 1997) (explaining that the process of procuring a Rule 17 trial subpoena "may be completed without any intervention by the court (other than the application to the Clerk) and without notice to the adverse party"). However, there are certain critical exceptions to that general rule—including when a subpoena seeks personal or confidential information about a victim, in which case leave

of court is mandatory. Fed. R. Crim. P. 17(c)(3); *see* 2 C. Wright, A. Miller, et al., *Federal Practice and Procedure* § 275 (4th ed. 2017) [hereinafter Wright & Miller] ("Leave of court is not ordinarily required for issuance of a subpoena duces tecum, except for a subpoena to a third party for personal or confidential information about a victim.").

In its review of the trial subpoenas and responses in connection with the preparation of this Decision and Order,[3] the Court learned that counsel for Nix violated the provisions of Rule 17(c)(3) on at least two separate occasions. Specifically, counsel for Nix issued at least two subpoenas seeking personal and confidential victim information without leave of Court or notice to the victims. One subpoena *duces tecum* issued by counsel for Nix on February 10, 2017, and returnable at the start of the trial on February 13, 2017, sought financial records concerning a victim in this case from ESL Federal Credit Union. Another subpoena *duces tecum* issued by counsel for Nix on February 27, 2017, and returnable on March 1, 2017, sought criminal history information related to another victim in this case from the New York State Division of Criminal Justice Services.

Rule 17(c)(3) is clear that Court approval must be obtained and certain procedures must be followed before seeking the type of information sought by counsel for Nix with

---

[3] Responses to the trial subpoenas containing the signature of the Clerk of the Court, issued without the Court's prior approval, were typically delivered to the Clerk's Office. Counsel were then notified that the subpoenaed records had arrived, at which point they would make arrangements to review the records at their convenience during the trial. The undersigned did not oversee the issuance of those subpoenas procured without Court approval, unless an issue arose that was brought to the Court's attention.

these subpoenas. In fact, during an appearance on February 10, 2017, in connection with the discussion of another subpoena issued by counsel for Nix, this Court expressly cautioned counsel about the requirements set forth in Rule 17(c)(3), when it came to seeking victim-related information. Yet, in a flagrant violation of the rules, counsel for Nix issued a subpoena seeking such victim-related information not only on the date of that conference, but also again two weeks later.

The conduct of Nix's counsel in this regard "directly implicates the court itself and creates an embarrassment for the institution." *Vo*, 78 F. Supp. 3d at 176 (quoting *United States v. Santiago-Lugo*, 904 F. Supp. 43, 48 (D.P.R. 1995)). Counsel for Nix is admonished that any further violations of Rule 17 (or any other rule) [4] in this or any other

---

[4] The Court is troubled by the fact that this is not the first time that Nix's counsel has run afoul of the rules in his attempts to zealously advocate for his client. He also employed a private investigator to contact trial jurors post-verdict at their homes. (Dkt. 270; Dkt. 275; Dkt. 278). As with the subpoenas, Nix's counsel failed to notify the Court (or opposing counsel) before contacting the jurors (Dkt. 270). *See United States v. Schwarz*, 283 F.3d 76, 98 (2d Cir. 2002) ("[W]e have established the requirement that '[a]t a minimum, . . . notice to opposing counsel and the court should be given in all cases' before engaging in any post-verdict inquiry of jurors." (quoting *United States v. Moten*, 582 F.2d 654, 665 (2d Cir. 1978)); *United States v. Brasco*, 516 F.2d 816, 819 n.4 (2d Cir. 1975) ("[P]ost-trial questioning of jurors must only be conducted under the strict supervision and control of the court, with inquiry restricted to those matters found by the court as both relevant and proper."); *see also United States v. Gagnon*, 282 F. App'x 39, 40 n.1 (2d Cir. 2008) (observing that defense counsel's "post-verdict contact with the former juror was wholly inappropriate" where counsel "commenced his investigation without giving notice to either the court or to opposing counsel").

On March 27, 2017, the Court ordered that any efforts to contact jurors must cease immediately, until further order of the Court. (*Id.*). The Court also directed Nix's counsel "to submit briefing identifying the basis on which he believes that he may conduct post-trial investigation of the jurors in this case, along with any other issues related to the juror contact." (Dkt. 275). Nix's counsel failed to submit any such briefing.

case before this Court may result in the imposition of sanctions and any other appropriate relief.

## POST-TRIAL USE OF SUBPOENAS
## & THE GOVERNMENT'S STANDING TO OBJECT

Two initial matters warrant discussion, although the parties do not appear to disagree as to these issues. Nonetheless, since the case law is not crystal clear, the Court believes the issues at least deserve a brief mention.

First, post-trial use of subpoenas pursuant to Fed. R. Crim. P. 17(c) has been recognized as permissible. *United States v. Leaver*, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005) ("A Rule 17(c) subpoena may also properly be used to gather documents for a pre-trial or post-trial hearing."); *see* Wright & Miller § 272 ("Rule 17 is not limited to subpoenas for the trial. A subpoena may be issued . . . for post-trial motions." (citing *United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981)). Nonetheless, while not cited by any party, in an unpublished decision, the Second Circuit stated in *United States v. Martin*, 141 F.3d 1152, 1998 WL 51206 (2d Cir. Feb, 10, 1998) (Table), that Rule 17(c) is "a discovery provision that relates solely to pretrial matters," and, as a result, the decision as to whether to allow a subpoena request for purposes of sentencing or a

---

Further, it was revealed at the March 29, 2017, appearance that Nix's counsel had retained the jury list and distributed a copy of it to the investigator, in violation of the Jury Plan for the Western District of New York, which states that an "attorney (or party) may not share the jury list or information therein except as necessary for purposes of jury selection. Following jury selection, the attorneys (or party) provided the jury list must return to the clerk the jury list and any copies made from the jury list provided to them and/or destroy them." Jury Plan for the United States District Court for the Western District of New York, *available at* http://www.nywd.uscourts.gov/jury-duty-information. Nix's counsel finally returned the jury lists to the Court only after the Court issued two text orders requiring him to do so. (Dkt. 275; Dkt. 278).

sentencing hearing is not made pursuant to Rule 17(c), but rather is committed to the sound discretion of the trial court. *Id.* at *2.

Nonetheless, since the Government does not contest that subpoenas are allowed post-trial pursuant to Rule 17(c), as opposed to the *Martin* court's suggestion that it should be a discretionary determination by the Court, the Court will evaluate the motions to quash pursuant to the standard under Rule 17(c). In any event, in exercising any discretion with respect to the post-verdict use of subpoenas, this Court would rely on the parameters of Rule 17(c).

Second, with the exception of the subpoenas directed to FBI—the law enforcement agency that worked with the U.S. Attorney's Office in the prosecution of this matter—all the subpoenas at issue are arguably directed to unrelated third parties. Under some circumstances, an argument could be launched (which has not been here) that the U.S. Attorney's Office does not have standing to move to quash subpoenas directed to unrelated third parties. However, Defendants have not raised the issue. Moreover, the Government has a legitimate interest in moving to quash the subpoenas, and this Court has an independent obligation to ensure compliance with Rule 17. As a result, the Court will evaluate the appropriateness of the subpoenas in view of the standards set forth by Rule 17. *See United States v. Raineri*, 670 F.2d 702, 712 (2d Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests . . . [such as] preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on . . . [a witness's] credibility."); *United States v. Vasquez*, 258 F.R.D. 68, 71-72

(E.D.N.Y. 2009) (concluding that government had standing to move to quash third-party subpoena because it had a legitimate interest in preventing defendant from using subpoena to obtain materials that would otherwise be protected from disclosure, and even if government did not have standing, "the Court has an independent duty to review the propriety of the subpoena—a duty in this case that requires the Court to consider whether the documents sought are privileged and whether the subpoena itself comports with the requirements of Rule 17"); *United States v. Nektalov*, No. S203CR.828(PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004) (government had standing to move to quash subpoena issued to third party); *United States v. Weissman*, No. 01 CR 529(BSJ), 2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002) ("Although the Defendant asserts that the Defendant lacks standing to move to quash, the Court will nonetheless address the Government's objections because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)."); *United States v. Coriaty*, No. 99CR1251(DAB), 2000 WL 1099920, at *6 n.4 (S.D.N.Y. Aug. 7, 2000) (considering government's motion to quash third-party subpoena, notwithstanding defendant's objections on ground that government had no standing, because "'it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose'" (citation omitted)); *United States v. Orena*, 883 F. Supp. 849, 869 (E.D.N.Y. 1995) (government had standing to move to quash subpoena directed to third party because it might have the effect of unduly lengthening the trial and unduly harassing government witness and his family).

## **PRE-TRIAL USE OF RULE 17(c) SUBPOENA**

Rule 17(c) governs the production of documents and objects by subpoena. A party seeking production pursuant to Rule 17(c) before trial must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699 (1974). "In other words, under the test adopted by the Supreme Court in *Nixon*, the proponent of a subpoena returnable before trial must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 (S.D.N.Y. 2011) (internal quotations and citation omitted).[5]

---

[5] Some courts, including one from this district, have suggested that *Nixon's* requirement that the material be "evidentiary" should not apply to subpoenas directed to third parties, as opposed to the Government. *United States v. Nachamie*, 91 F. Supp. 2d 552, 562-63 (S.D.N.Y. 2000) (requirement that the material sought be "evidentiary" may not be appropriate in the context of a defendant seeking material from a third party); *see also United States v. Soliman*, No. 06CR236A, 2009 WL 1531569, at *9-12 (W.D.N.Y. May 29, 2009) (defendant "need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond" (citation omitted)); *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (same); *cf. Rajaratnam*, 753 F. Supp. 2d at 320 n.1 ("The Court is unaware of any other decision applying a test less restrictive than the *Nixon* test to a Rule 17(c) subpoena issued to a third party...."). The Second Circuit has not adopted this less-restrictive test. *See United States v. Barnes*, 560 F. App'x 36, 40 n.1 (2d Cir. 2014) (declining to address the defendant's argument that the court "forego the *Nixon* standard for the more permissive standard employed in [*Tucker*]...."), *cert. denied*, 134 S. Ct. 2715 (2014).

"Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980). In other words, while it is permissible for a criminal defendant to issue a Rule 17(c) subpoena, Rule 17(c) is "not intended to provide an additional means of discovery," *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951), but rather provides a method "to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials," *Nixon*, 418 U.S. at 698-99 (emphasis added). *See also United States v. Louis*, No. 04 Cr. 203(LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005) (purpose of 17(c) subpoena is "trial-focused" and may be used "only to obtain materials admissible as evidence at trial").

At least one commentator has suggested that Court approval is not mandated by Rule 17(c) for the issuance of subpoenas in advance of trial. Wright & Miller § 275 ("Some courts hold that the court's discretion must be invoked by motion in advance if a subpoena is to be made returnable in advance of the trial. This is an orderly and desirable procedure and one frequently followed, but the rule does not require it, and the question can be raised as well on a motion to quash, which is specifically authorized by Rule 17(c)(2)."). This Court disagrees with that suggestion. The Rule itself expressly contemplates pre-trial production, but only upon order of the court. Fed. R. Crim. P. 17(c)(1) ("The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence."). Moreover, since notice is not provided to the adverse party in advance of the service of a subpoena under Rule 17(c),

- 13 -

the notion that the appropriateness of the subpoena could easily be raised on a motion to quash is unsound—the third party served with the subpoena may not have a vested interest in moving to quash, and the opposing party would not typically become aware of the subpoena until after the subpoena has been served and the documents produced. *See Vo*, 78 F. Supp. 3d at 178 ("Rule 17 provides a limited grant of authority, mentioning pretrial production only in connection with court approval. The Rule, in 'leaving advance production to the court's discretion [,] is no mere technicality. It is a vital protection against misuse or improvident use of such subpoenas.'" (citations omitted)).

Here, all of the subpoenas seek pre-trial (or pre-hearing) production of documents. They were all made returnable on randomly selected dates and times in the undersigned's Chambers. Defense counsel issued these subpoenas without seeking this Court's approval. This is an improper use of the subpoena power under Rule 17. With no prior Court approval, Defendants seek production of documents not for purposes of any trial or hearing, but rather so that defense counsel can examine the documents at their leisure once the documents are produced. At a minimum, Court approval should have been sought for the subpoenas and the failure to do so, in and of itself, justifies granting the Government's motions.

## **DEFENDANTS ARE ENGAGED IN A FISHING EXPEDITION**

Even if the subpoenas were properly issued, it is apparent that the information sought by Defendants goes far beyond the scope of the proper use of a Rule 17(c) subpoena. In other words, Defendants appear to hope that once the documents are produced, the documents will lead to the discovery of information that can be used in

support of post-trial motions to set aside the convictions in this case. "To permit a Rule 17(c) subpoena in these circumstances would be to extend the rule far beyond its limits, transforming it from a carefully circumscribed device to expedite trials and hearings into an effectively unlimited tool for discovery and investigation." *Leaver*, 358 F. Supp. 2d at 276.

When faced with a motion to quash, the party seeking compliance "must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *Barnes*, 560 F. App'x at 39-40; *see United States v. Fernandes*, 115 F. Supp. 3d 375, 379 (W.D.N.Y. 2015) ("A party seeking issuance of a Rule 17(c) subpoena for production of material prior to trial has the burden of showing good cause." (citation omitted)); *United States v. Capalbo*, No. S4 02 Cr. 1237 (SWK), 2005 U.S. Dist. LEXIS 47025, at *2 (S.D.N.Y. Feb. 18, 2005) (same). "The Court 'assesses and controls the extent to which [Rule 17] is used in a good-faith effort to obtain evidence "by its power to rule on motions to quash and modify."'" *Vasquez*, 258 F.R.D. at 72 (citations omitted).

"If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes something useful will turn up, the requirement of specificity will not have been met." *Leaver*, 358 F. Supp. 2d at 276 (quoting *Weissman*, 2002 WL 31875410, at *1); *see United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("[T]he party's Rule 17(c) subpoena 'must be able to "reasonably specify the information contained or believed to be contained in the documents sought" rather than "merely hop[e] that something useful will

turn up."'"); *Weissman*, 2002 WL 31875410, at *1-2 (granting government's motion to quash subpoena where defendant, who claimed that the subpoena "may" have some evidentiary basis, was engaged in fishing expedition); *Orena*, 883 F. Supp. at 867 ("It is not the purpose of Rule 17(c) to facilitate discovery."). As explained by the Supreme Court: "Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co.*, 341 U.S. at 220.

Here, Defendants have utterly failed to meet their burden. Nix's counsel attempts to turn the burden on its head, arguing in opposition to the motions to quash that the Court should "direct the Government to set forth facts and circumstances specific to the other subpoena [sic] upon which they make their application to allow the Defense to respond." (Dkt. 288 at ¶ 12). The Government does not have the burden here—it is Defendants who must establish that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence. They have totally failed to even come close to meeting that standard.

Most of the information sought with the subpoenas—from the social media information of Defendants or other witnesses, to the jail house calls of an individual who did not even testify in this case, to the telephone records that were already provided as part of discovery in this case—all relate, at best, to fact issues that arose at trial or material that could have potentially been used for impeachment at trial. There is no justification for Defendants' pursuit of this type of information post-verdict. Indeed, based on the circuitous explanation offered by counsel for Nix at the status conference on

March 29, 2017, it appears that Defendants hope to uncover information with the subpoenas that will support an argument that the Government engaged in some type of misconduct in its prosecution of this case. Not only has there been no showing to support such a theory beyond rampant speculation, but this is far outside the scope of a proper Rule 17(c) subpoena.

With respect to the information sought regarding the background information of the prospective jurors in this case, or any other investigatory information utilized by the Government during *voir dire* in this trial, the Court recognizes that Defendants have raised an issue regarding the qualifications of a juror who served in this case (a juror different than the excused prospective juror T.P.), and the Court also acknowledges that the efforts undertaken by *all parties* to investigate the background of prospective jurors in this case may be relevant to the Court's consideration of the post-trial motions. However, the Court intends to firmly regulate any inquiry in that regard. Allowing one side to unilaterally pursue this information with overbroad and scattershot subpoenas is not the proper means to do so.

## CONCLUSION

For the foregoing reasons, the Government's motions to quash (Dkt. 272; Dkt. 279) are granted.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 3, 2017
Rochester, New York