UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**DECISION AND ORDER**

v.

6:14-CR-06181 EAW

MATTHEW NIX and EARL McCOY,

Defendants.

## I.    Introduction

Presently before the Court is a motion filed by defendants Earl McCoy ("McCoy")
and Matthew Nix (collectively, "Defendants") seeking reconsideration of the Court's
Decision and Order, dated August 24, 2017, in which the Court denied Defendants'
motions for a new trial, pursuant to Fed. R. Crim. P. 33, to the extent that those motions
were based on Juror No. 3's alleged bias. (*See* Dkt. 385-1). Defendants request a new
evidentiary hearing concerning Juror No. 3's qualifications to serve on the jury, recusal of
the undersigned, and assignment of new counsel for purposes of the evidentiary hearing.
(*See id.*).

Defendants' motion is based upon a flawed understanding of the facts and law, and
represents a fundamental misapprehension of the Court's role in adjudicating their initial
Rule 33 motion directed to Juror No. 3's alleged bias. Not surprisingly, Defendants
disagree with the Court's decision. However, those disagreements should be pursued on
appeal, not through motion practice that, at bottom, seeks to obtain a more favorable ruling

on the issue of Juror No. 3's alleged bias. For the reasons set forth below, Defendants' motion is denied in its entirety.

## II.  **Background**

The facts relevant to the issue of Juror No. 3's alleged bias are set forth in detail in the Court's prior Decision and Order, with which familiarity is assumed. (*See* Dkt. 382). The Court provides only a summary of those facts, as well as additional background information as relevant to this motion.

In brief, Juror No. 3, an African American male, was the sixth prospective juror called by the Court's deputy clerk during jury selection on February 13, 2017. (Dkt. 328 at 29). To accommodate the panel of 36 prospective jurors, a row of additional freestanding chairs was placed in front of the jury box in the courtroom. Juror No. 3 was seated in that front row outside the jury box, in the sixth seat of the panel of 36. (*See id.*). Juror No. 3 is a convicted felon, but he failed to disclose his criminal history during jury selection. After announcing the members of the jury and alternate jurors, the Court asked all selected jurors to remain where they were seated. (*Id.* at 278). Thus, at the close of jury selection, Juror No. 3 remained in the sixth seat in the front row outside of the jury box.

Juror No. 3's felon status was discovered only after the verdict. Defendants both moved for a new trial pursuant to Fed. R. Crim. P. 33 and argued, *inter alia*, that Juror No. 3's felon status destroyed the impartiality of the jury. (Dkt. 286; Dkt. 289).

At an initial appearance regarding Defendants' post-verdict motions on May 15, 2017, the Court concluded that it must hold an evidentiary hearing concerning Juror No. 3's qualifications to serve on the jury. (*See* Dkt. 327). At that appearance, the Court

explained that it would have to make a determination regarding Juror No. 3's credibility. (*Id.* at 30-31). In response, AUSA Rodriguez contended that "this was a juror who wasn't dying to be on th[e] jury," and the Court agreed, stating that it had the same recollection. (*Id.* at 31). AUSA Rodriguez then commented as follows:

> When your Honor was asking about possible conflicts, he pointed out having his business interrupted, and, as I recall, your Honor had him actually check during the break. And then for purposes of the record, I don't know that it actually made it on the record, I am hoping counsel won't dispute this, after the jury got picked, they're seated in the box and your Honor is giving them, now, it's like 5:30, close to 6, your Honor is giving them a little bit of preliminary instructions, that juror got up and walked out before your Honor was even done giving instructions, which again, suggested that he was not happy about being on the jury and that is one of the issues that your Honor is going to—that we would submit to your Honor.

(*Id.* at 31-32). Defense counsel did not dispute AUSA Rodriguez's description of Juror No. 3's departure from the courtroom on the day of jury selection.

The Court held an evidentiary hearing on June 12 and 14, 2017, during which Juror No. 3 testified, confirmed his felon status, and was examined by the Court and counsel. (Dkt. 348; Dkt. 353). On August 24, 2017, after the parties had filed post-hearing submissions (Dkt. 363; Dkt. 369; Dkt. 370; Dkt. 371; Dkt. 372), the Court issued a Decision and Order denying Defendants' Rule 33 motions to the extent that those motions were based upon Juror No. 3's alleged bias. (Dkt. 382).

On August 30, 2017, the Court received an emailed letter from counsel for McCoy in which counsel requested, *inter alia*, "leave to make a motion to vacate the Decision and Order and request that the matter be set down before a different judge for a new fact finding hearing." That day, the Court issued a Text Order directing any party seeking affirmative

relief to file a formal motion, as the Court would not respond to emails or letter requests for affirmative relief. (Dkt. 384).

On September 1, 2017, Defendants filed the instant motion.[1] (Dkt. 385). The Government filed a response in opposition to the motion on September 20, 2017 (Dkt. 392), and the motion was deemed submitted without oral argument (Dkt. 386).

## III. Standard of Review

Defendants' motion papers lack any identified legal basis for their requested relief. (*See* Dkt. 385-1). Given that Defendants seek relief from the Court's Decision and Order, the Court construes the motion as one for reconsideration.

Although the Federal Rules of Criminal Procedure do not specifically recognize motions for reconsideration, such motions "have traditionally been allowed within the Second Circuit." *United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006). District courts "have applied the applicable civil standard to such motions in criminal cases." *United States v. Larson*, No. 07-CR-304S, 2013 WL 6196292, at *2 (W.D.N.Y. Nov. 27, 2013).

> The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.

---

[1] Defendants' motion also requested adjournment of Defendants' sentencing, a request which has been granted. (Dkt. 385-1 at ¶ 11; Dkt. 386). Sentencing is now scheduled for September 29, 2017. (Dkt. 386).

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Common grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Boyde v. Osborne*, No. 10-CV-6651, 2013 WL 6662862, at *1 (W.D.N.Y. Dec. 16, 2013) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

"[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *see also Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) ("A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court."). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court. . . ." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted). Above all, "[r]econsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).

## IV.   Reconsideration is Not Warranted

Defendants take issue with a specific portion of the Court's Decision and Order, in which the Court set forth the following observation:

During the jury selection, Juror No. 3 was frustrated with the Court about the length of the proceedings (*see* Dkt. 359 at 238-39), and in fact, once selected to serve, he left the courtroom as the Court was still informing the jurors about some housekeeping matters (*see* Dkt. 327 at 32).

(Dkt. 382 at 55). Defendants question whether Juror No. 3 did, in fact, leave the courtroom as the Court observed, stating that "[a]t no time did Mr. Rodriguez or anyone else make a record of witnessing this event prior to May 15, 2017" (Dkt. 385-1 at ¶ 4), when the Court held an initial appearance regarding the parties' post-verdict motions. Defendants argue that, "at the time Mr. Rodriguez made this comment, neither [the] Court nor counsel specifically agreed with it, or expressed disagreement with it," and that "it would seem unusual for an event like this to happen without the Court admonishing the juror or making a record of this alleged incident." (*Id.*). As a result, in Defendants' view, "it appears the Court did not so observe" the incident. (*Id.*). Defendants also doubt whether Juror No. 3 left the courtroom in this manner because defense counsel do not recall it happening. (*Id.* at ¶ 5). Defendants maintain that they would have remembered the incident based on their recollection that Juror No. 3 "was sitting near the inside of the row and in order to stage this walkout from the courtroom, he would have had to have gotten up and stepped over four other jurors to do so." (*Id.*). As discussed below, Defendants' challenge to this portion of the Decision and Order is both factually incorrect and without a basis in the law.

To be clear, the undersigned did observe Juror No. 3 leave the courtroom while jurors were still being informed about housekeeping matters, independently of AUSA Rodriguez's observation and later summary of the same incident. Regrettably, the transcript contains no record of Juror No. 3's departure. The undersigned's recollection is

that this occurred at the tail end of the proceedings, after the formal admonitions had been provided to the jurors, but while jurors were asking questions concerning housekeeping matters. At the time, the undersigned was already aware of Juror No. 3's anxiousness to leave because, earlier that day, Juror No. 3 had approached the undersigned during a break, asked what time the proceedings would end, and expressed frustration when the Court responded that the proceedings would end at approximately 6:00 PM. (Dkt. 328 at 32 (the Court recalling, during the appearance on May 15, 2017, that "at one break when we were going late, [Juror No. 3] came up to me and wanted to know how late we were going and I think I told him 6 o'clock and he was angry"); Dkt. 359 at 238-39 (the Court recalling, during evidentiary hearing, Juror No. 3's frustration about being kept late)). Again, although the transcript contains no record of Juror No. 3's departure, the undersigned has an independent recollection of the incident. In fact, to be clear, the undersigned specifically recalls all the references to Juror No. 3's behavior during jury selection and the trial as set forth in the prior Decision and Order (Dkt. 382 at 5-6, 55-56, 61), separate and apart from any independent record contained in any of the transcripts.

Because the trial transcript contains no reference to Juror No. 3's departure on the date of jury selection, the Court's Decision and Order cited to the transcript of the appearance on May 15, 2017, which reflects AUSA Rodriguez's description of the incident:

> And then for purposes of the record, I don't know that it actually made it on the record, I am hoping counsel won't dispute this, after the jury got picked, they're seated in the box and your Honor is giving them, now, it's like 5:30, close to 6, your Honor is giving them a little bit of preliminary instructions, that juror got up and walked out before your Honor was even done giving

instructions, which again, suggested that he was not happy about being on
the jury and that is one of the issues that your Honor is going to—that we
would submit to your Honor.

(Dkt. 327 at 31-32). AUSA Rodriguez's statement was cited as support for the Court's

own observation, and it is entirely consistent with the Court's recollection. It was not cited

as independent proof of the incident.[2]

Further, Defendants' incorrect assertion that Juror No. 3 would have had to climb

over four other jurors is based on an erroneous recollection of the jurors' seating

arrangements at the end of jury selection. When the Court announced the jury, the jurors

remained where they had been seated in the 36-person panel. In other words, the Court did

not instruct the jurors to sit in the 14-person jury box as they would throughout the trial; it

was not until the next day that the jurors took their seats in the correct order within the jury

box. After announcing the jury and alternates, the Court stated, "If your name was not

called, you are free to go with my thanks and appreciation. If your name was called, I just

ask that you stay where you're seated." (Dkt. 328 at 278). At that time, Juror No. 3 was

seated in the front row outside of the jury box, in the sixth seat of the 36-person panel.

From that position, Juror No. 3 had an easy means of egress. Thus, Defendants' assertion

that Juror No. 3 must have "stepped over four other jurors," resulting in some sort of

commotion that defense counsel surely would have remembered, is just wrong.

---

[2]     The Court's citation of the May 15, 2017, transcript was preceded by a "see" signal.
For the uninitiated, a "see" signal "is used instead of '[no signal]' when the proposition is
not directly stated by the cited authority but obviously follows from it; there is an inferential
step between the authority cited and the proposition it supports." *The Bluebook: A Uniform
System of Citation* R. 1.2(a), at 58 (Columbia Law Review Ass'n et al., eds., 20th ed. 2015).

The Court is hard-pressed to credit the notion that defense counsel were somehow blindsided by the idea that the Court would consider its own observations in its ruling (*see* Dkt. 385-1 at ¶ 6 (arguing that "[t]he Court never indicated that it would be considering the juror's facial expressions, rolling of eyes, etc. in determine [sic] the issues at the hearing")), when those observations were mentioned at the appearance on May 15, 2017— before the evidentiary hearing took place—during a discussion of the credibility determination that the Court would have to make. (Dkt. 327 at 30).

Moreover, Defendants' challenge to the Court's reliance on its observations of Juror No. 3's behavior during *voir dire* is legally baseless. Defendants point to no case law that holds that, when considering the question of whether a juror was biased, a Court is constrained to the evidence adduced at a post-verdict evidentiary hearing and may not rely on its own observations of the juror's behavior and demeanor during the *voir dire*, the trial, or at other points outside of the evidentiary hearing. (*See* Dkt. 385-1). Indeed, the relevant cases undermine Defendants' position.

For example, in *United States v. Greer*, 285 F.3d 158 (2d Cir. 2002), the Second Circuit concluded that the district court did not abuse its discretion in finding no actual bias on the part of a juror who failed to disclose certain information during jury selection. *Id.* at 171. The Second Circuit noted that the district court's finding was based upon its "evaluation of the testimony at trial and the post-trial evidentiary hearing." *Id.* The Second Circuit explained that deference to a district court's determination regarding actual bias is warranted because "[t]he district court, which observ[es] the jury on a day to day basis . . . is in the best position to sense the atmosphere of the courtroom as no appellate court can

on a printed record." *Id.* (quoting *United States v. Abrams*, 137 F.3d 704, 708 (2d Cir. 1998)). In rendering its decision, the district court applied the relevant test set forth in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), but suggested that, in reaching its conclusion, it was not confined to the evidence adduced at the post-trial evidentiary hearing:

> The investigation of juror bias or extrinsic evidence is governed by a variety of court-defined procedures and tests. It must not be forgotten, however, that the overarching purpose of either inquiry is to ascertain whether the case was fairly tried to an impartial jury. The Court has had an opportunity to observe these jurors both at the posttrial hearing *and during the course of a complicated ten-week trial.*

*United States v. Greer*, 998 F. Supp. 399, 405 (D. Vt. 1998) (emphasis added). In support of its finding that the challenged juror was not biased against the defendants, the district court stated that it had "observed [the challenged juror] both at th[e post-trial] hearing and during an extended trial. . . ." *Id.* at 407. This suggests that a district court is plainly not constrained to the record adduced at the evidentiary hearing. Like the district court in *Greer*, this Court had an opportunity to observe Juror No. 3 over the course of a five-week trial, as well as during the evidentiary hearing, and there is no reason to conclude that the Court was required to disregard its pre-evidentiary hearing observations of Juror No. 3 when evaluating his alleged bias.

Moreover, a district court may consider a juror's demeanor and credibility when ruling on for-cause challenges to a prospective juror. In *United States v. Torres*, 128 F.3d 38 (2d Cir. 1997), the Second Circuit concluded that the district court had properly exercised its discretion to excuse a prospective juror, who had engaged in criminal conduct

similar to the crimes on trial, before trial. *Id.* at 45. The Second Circuit observed that "[t]he trial judge has . . . broad discretion [in its rulings on challenges for cause] because a finding of actual bias 'is based upon determinations of *demeanor and credibility* that are peculiarly within a trial judge's province.'" *Id.* at 44 (emphasis added) (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)). The Second Circuit further explained that, "[g]iven the special capacity of the trial judge to evaluate actual bias on the part of prospective jurors, that judge's determination in this regard is accorded great deference, since 'an appellate court [cannot] easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses.'" *Id.* (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981)); *accord United States v. Ploof*, 464 F.2d 116, 118 (2d Cir. 1972) ("[T]he judge was in the best position to evaluate the juror's demeanor and to determine, by the juror's answers to the judge's questions, whether he could fairly and impartially hear the case and return a verdict based solely on the evidence presented in court."). If the district court properly considers a prospective juror's demeanor and credibility during jury selection when making its rulings on a challenge for cause, it follows that a court is also able to do so when considering juror bias after the trial.

Equally as flawed is Defendants' contention that the Court was "acting as a witness" by noting its observation of Juror No. 3's conduct during the trial, in violation of Federal Rule of Evidence 605. Rule 605 provides that "[t]he presiding judge may not testify as a witness at the trial. A party need not object to preserve the issue." Fed. R. Evid. 605. This Court did not violate Rule 605. In Defendants' own words, "the Court did not testify here." (Dkt. 385-1 at ¶ 7). Further, making a credibility determination based, in part, on

observations of Juror No. 3's behavior during jury selection and trial, does not transform this Court into a witness; indeed, Defendants' argument to the contrary reveals their fundamental misunderstanding of the Court's role. Rule 605 is violated in the following circumstances: "Where the [judge's] statement relates to facts that are within the power of the jury to decide and the credibility of the judge has a bearing on the weight the jury is likely to give to her statement, the statement functions like testimony and should be prohibited." 27 Charles A. Wright & Victor Gold, *Federal Practice and Procedure: Evidence* § 6063 (2d ed. 1990). No jury was to decide the issue of juror bias; rather, it was up to the Court to resolve that question. Consistent with that responsibility, the Court relied, in part, on its observations of Juror No. 3's behavior and demeanor during the jury selection and the trial, which, as discussed above, was permissible. Indeed, to conclude that a judge improperly testifies in violation of Rule 605 when she makes a credibility determination would be an absurd result and upend the well-established principle, discussed above, that the trial court is best-suited to evaluate bias because it has heard and observed prospective jurors.

Notably, Defendants' motion for reconsideration fails to "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. In other words, even setting aside the issue of Juror No. 3's behavior during jury selection and the trial, the Court would still conclude that Juror No. 3 was not biased against Defendants. The record is devoid of any proof that Juror No. 3 had "actual bias" against Defendants or intentionally lied to smuggle his way onto the jury. There is still no fact in

the record which, had it been elicited during jury selection, would have required the Court to automatically assume Juror No. 3's bias or prejudice against Defendants or in favor of the Government. And there is still no reason to infer Juror No. 3's bias, whether it be from his decades-old criminal history, being a victim of a home robbery 20 years ago, or his family members' alleged criminal records; the Court has rejected the notion that bias must be inferred from Juror No. 3's undisclosed background. Put simply, Juror No. 3's behavior during jury selection was just one consideration among many in the Court's analysis of whether he was biased; it was by no means dispositive of that issue, and, even excluding any consideration of his behavior, the outcome would have been the same. Defendants have not demonstrated why a different outcome is justified by an intervening change in law, by new evidence that was not previously available, or because of a need to correct clear error of law or prevent manifest injustice. Thus, the Court declines to grant the "extraordinary remedy" of reconsideration. *Parrish*, 253 F. Supp. 2d at 715 (citation omitted).

At bottom, Defendants' motion largely seems to be an expression of their dissatisfaction with the Court's denial of their Rule 33 motions that were based on Juror No. 3's alleged bias, but "[a] motion for reconsideration is not a substitute for appeal. Nor is it a second bite at the apple for a party dissatisfied with the court's ruling." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 392, 395 (E.D.N.Y. 2011) (citation and alterations omitted). Defendants fail to meet the relevant standard for reconsideration, as their motion is unadorned by any citations to case law that support their position or entitlement to the requested relief.

Because Defendants have failed to demonstrate that reconsideration of the Court's prior Decision and Order is warranted, the Court declines to consider Defendants' requests for additional relief: a new evidentiary hearing concerning Juror No. 3, recusal of the undersigned, and assignment of new counsel for purposes of the evidentiary hearing. (*See* Dkt. 385-1 at ¶¶ 9-10). All of those requests necessarily depend upon the Court granting reconsideration of the Rule 33 motions concerning Juror No. 3's alleged bias. Nevertheless, because this is Defendants' second request for recusal of the undersigned in this case (*see* Dkt. 344 (denying motion for recusal)), the Court notes that the present request for recusal lacks merit. Recusal is required under 28 U.S.C. § 455(b) in certain circumstances, including, as relevant to Defendants' motion (*see* Dkt. 385-1 at ¶ 9 (citing "personal knowledge" prong of § 455(b)(1)), where a judge has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). But, as the Government rightly points out, not all "personal knowledge" warrants disqualification. (*See* Dkt. 392 at 2). Rather, the term "personal" means "extrajudicial," such that "[i]nformation or knowledge possessed by a judge must stem from an extrajudicial source to warrant disqualification." *United States v. Coven*, 662 F.2d 162, 168 (2d Cir. 1981). In other words, "[k]nowledge acquired by the judge while [s]he performs judicial duties does not constitute grounds for disqualification." *Id.*; *accord United States v. Sturgis*, 667 F. App'x 347, 348 (2d Cir. 2016) (rejecting recusal argument based on extrajudicial limitation to § 455(b)(1) and because the defendant pointed only to "information that exists in the public record or knowledge that [the district court judge] . . . gained in his professional capacity"); *United*

*States v. Sehgal*, 480 F. App'x 16, 22 (2d Cir. 2012) (explaining that the personal knowledge referenced in § 455(b)(1) applies to extrajudicial knowledge); *United States v. Carlton*, 534 F.3d 97, 101 n.2 (2d Cir. 2008) ("[T]he term 'personal' in Section 455(b)(1) means extrajudicial." (citations omitted)).  Because the Court's knowledge of Juror No. 3's behavior and demeanor stemmed from events that occurred during the proceedings in this case, it is not "extrajudicial" knowledge, and, therefore, recusal would not be required under § 455(b)(1).  In arguing otherwise, Defendants once again reveal their basic misconception of the role of the Court.

**V.    Conclusion**

For the reasons set forth above, the Court denies Defendants' motion (Dkt. 385) in its entirety.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  September 25, 2017
        Rochester, New York

- 15 -