UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.

MATTHEW NIX and EARL McCOY,

Defendants.

**DECISION AND ORDER**

6:14-CR-06181 EAW

I. **Introduction**

Presently before the Court are two motions filed by defendants Earl McCoy ("McCoy") and Matthew Nix ("Nix") (collectively, "Defendants") seeking reconsideration of the Court's Decision and Order, dated August 24, 2017 ("Rule 33 Denial Order"), in which the Court denied Defendants' motions for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on Juror No. 3's alleged bias. (*See* Dkt. 417; Dkt. 418). Through this second set of motions for reconsideration of the Rule 33 Denial Order, Defendants request vacatur of the judgment and a new trial, or, alternatively, a continuation of the evidentiary hearing regarding Juror No. 3's qualifications to sit on the jury. (*See* Dkt. 417 at 1; Dkt. 418 at 1). The Government opposes Defendants' motions. (Dkt. 425). For the reasons set forth below, the Court denies Defendants' motions in their entirety.

II. **Background**

The facts relevant to the issue of Juror No. 3's alleged bias are set forth in detail in the Rule 33 Denial Order, with which familiarity is assumed. (*See* Dkt. 382). The Court

- 1 -

provides only a summary of those facts, as well as additional background information as relevant to this motion.

In brief, Juror No. 3, an African American male, was the sixth prospective juror called by the Court's deputy clerk during jury selection on February 13, 2017. (Dkt. 328 at 29). Juror No. 3 is a convicted felon, but he failed to disclose his criminal history during jury selection. Juror No. 3's felon status was discovered only after the verdict, which was returned on March 17, 2017. (Dkt. 266; Dkt. 267). Defendants both moved for a new trial pursuant to Rule 33 and argued, *inter alia*, that Juror No. 3's felon status destroyed the impartiality of the jury. (Dkt. 286; Dkt. 289).

On March 30, 2017, counsel for Nix made a Freedom of Information Law ("FOIL") request "for any and all criminal records and reports to the Monroe County District Attorney's Office concerning Juror #3 . . . and only received one page which did not concern the incident, on or about June 7th, 2017." (Dkt. 417-1 at ¶ 19).

At an initial appearance regarding Defendants' post-verdict motions on May 15, 2017, the Court concluded that it must hold an evidentiary hearing concerning Juror No. 3's qualifications to serve on the jury. (*See* Dkt. 327). The Court held an evidentiary hearing on June 12 and 14, 2017, during which Juror No. 3 testified, confirmed his felon status, and was examined by the Court and counsel. (Dkt. 348; Dkt. 353). On the first day of the evidentiary hearing, Juror No. 3 was asked if he recalled being arrested for a burglary of a home in May of 1989, and he answered that he did not recall. (Dkt. 358 at 84).[1]

---

[1]    Citations to the transcripts of the evidentiary hearing are to the transcripts' pagination, not the pagination set forth in CM/ECF.

During the second day of the evidentiary hearing, Assistant District Attorney Stephen O'Brien ("ADA O'Brien") appeared in response to a subpoena that counsel for Nix had served upon the Monroe County District Attorney's Office ("MCDAO") on June 13, 2017, one day earlier. (Dkt. 359 at 144). The subpoena sought production of certain documents, including those related to a May 1989 burglary for which Juror No. 3 was allegedly charged but not convicted. ADA O'Brien moved to quash the subpoena, arguing that it was overbroad. (*Id.* at 144). ADA O'Brien also informed the Court that the MCDAO had been unable to locate any file pertaining to Juror No. 3 that would respond to the subpoena. (*Id.* at 144-47).[2] ADA O'Brien stated that the MCDAO employed a contractor to house older files, and the contractor was unable to locate the requested file pertaining to Juror No. 3. (*Id.* at 145). While there was a possibility that the file was misfiled, the MCDAO would have to pay a fee for the contractor to sift through thousands of individual boxes of files—with, of course, no guarantee that the file would be located. (*Id.* at 146-47). The Court quashed the subpoena, determining that it was overbroad, that the MCDAO's reasonable efforts to search for the requested records had yielded no results, and that it would be unnecessarily burdensome to require a search of each box that the contractor maintained. (*Id.* at 151). The evidentiary hearing concluded on June 14, 2017.

---

[2] As noted by ADA O'Brien, the contractor was able to locate a file pertaining to another individual referenced in the subpoena. (*Id.* at 147). Those documents were produced after the hearing, and although unrelated to any charges involving Juror No. 3, counsel was afforded an opportunity to review the documents in Chambers.

On June 27, 2017, Nix filed a motion requesting the issuance of post-hearing subpoenas to the Monroe County Clerk and the Rochester City Court for records of the May 1989 burglary. (Dkt. 354). Nix stated that "the juror witness would not have to be recalled" if the subpoenas were issued. (*Id.* at ¶ 11). The Government opposed the motion. (Dkt. 361). At an appearance before the Court on July 6, 2017, the Court noted that the requested information was "probably outside the scope of a proper judicial subpoena" (Dkt. 421 at 11), and that "the application is untimely" (*id.* at 12). Nevertheless, the Court permitted the subpoenas to issue in order to allow the defense to explore whether there were any records concerning the May 1989 burglary. (*Id.* at 13).[3]

On August 24, 2017, after the parties had filed post-hearing submissions (Dkt. 363; Dkt. 369; Dkt. 370; Dkt. 371; Dkt. 372), the Court issued the Rule 33 Denial Order, which denied Defendants' Rule 33 motions to the extent that those motions were based upon Juror No. 3's alleged bias. (Dkt. 382). In the Rule 33 Denial Order, the Court concluded that Juror No. 3's criminal history—including the alleged arrest for burglary of a home—did not justify a finding that Juror No. 3 was biased against Defendants:

> Additionally, the information disclosed about Juror No. 3's criminal history does not support an inference of bias against Defendants. The fact that Juror No. 3 has been previously arrested and convicted of two prior felonies—including convicted for burglarizing a clothing store and *possibly arrested for burglarizing a home*—does not justify a finding of bias against Defendants, and Defendants cannot articulate any reasonable basis for concluding otherwise.

---

[3] In response to the subpoenas, the Rochester City Court Clerk had no responsive documents, and the Monroe County Clerk produced records that were duplicative of records previously obtained and unrelated to the May 1989 burglary.

(*Id.* at 61-62 (emphasis added)). In so concluding, the Court specifically noted Juror No. 3's inability to recall the burglary arrest in May of 1989:

> There is some evidence in the record that Juror No. 3 may have been arrested for burglarizing a home in May of 1989 (when he was 19 years old). However, Juror No. 3 had no recollection of this alleged incident, and there is no evidence that he was convicted of this crime.

(*Id.* at 61 n.30 (citing Dkt. 358 at 84)).

On September 1, 2017, Defendants filed a motion that this Court construed as seeking reconsideration of the Rule 33 Denial Order. (Dkt. 385). Defendants took issue with the Court's observation, set forth in the Rule 33 Denial Order, that Juror No. 3 had left the courtroom during jury selection while the Court was informing the jurors about certain housekeeping matters. (Dkt. 382 at 55). This Court denied reconsideration in a Decision and Order dated September 25, 2017. (Dkt. 394).

On October 17, 2017, this Court sentenced Nix principally to 155 years' imprisonment and McCoy principally to 135 years' imprisonment. (Dkt. 405; Dkt. 406). Judgment was entered as to both Nix and McCoy on October 24, 2017 (Dkt. 405; Dkt. 406), and Defendants timely appealed their convictions and sentences (Dkt. 407; Dkt. 408). Defendants' appeals remain pending.

On October 25, 2017, counsel for Nix apparently sent a FOIL request to Monroe County, seeking Juror No. 3's criminal records. (Dkt. 417-2 (Letter Response to FOIL Request); Dkt. 418 at ¶ 6). On November 27, 2017, Monroe County produced the requested records. (Dkt. 417-2 (Letter Response to FOIL Request); Dkt. 418 at ¶ 6).

On December 15, 2018, Defendants filed the instant motions for reconsideration of the Court's Rule 33 Denial Order. (Dkt. 417; Dkt. 418). On January 5, 2018, the Government filed its response in opposition to Defendants' motions (Dkt. 425), and on January 12, 2018, Defendants filed their replies in support of their motions (Dkt. 443; Dkt. 443). The Court deemed the motion submitted without oral argument. (*See* Dkt. 419).

### III. Jurisdiction

Despite the pendency of Defendants' appeals, this Court may entertain and deny—but not grant—a Rule 33 motion or motion for reconsideration of a Rule 33 motion. *See United States v. Camacho*, 302 F.3d 35, 36-37 (2d Cir. 2002) (holding that a district court may entertain and *deny* a Rule 33 motion, or a motion for reconsideration of an order on a Rule 33 motion, during the pendency of an appeal); *see also* Fed. R. Crim. P. 33(b)(1) (providing that, "[i]f an appeal is pending, the court may not *grant* a motion for a new trial until the appellate court remands the case," but not limiting a court's ability to deny such a motion (emphasis added)).

### IV. Standard of Review for Reconsideration

Defendants move for reconsideration of the Rule 33 Denial Order. (*See* Dkt. 417; Dkt. 418). Although the Federal Rules of Criminal Procedure do not specifically recognize motions for reconsideration, such motions "have traditionally been allowed within the Second Circuit." *United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006). District courts "have applied the applicable civil standard to such motions in criminal cases." *United States v. Larson*, No. 07-CR-304S, 2013 WL 6196292, at *2 (W.D.N.Y. Nov. 27, 2013).

> The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Common grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Boyde v. Osborne*, No. 10-CV-6651, 2013 WL 6662862, at *1 (W.D.N.Y. Dec. 16, 2013) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

"[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *see also Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) ("A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court."). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court. . . ." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted). Above all, "[r]econsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).

## V. Reconsideration is Not Warranted

### A. Defendants' Proffered Evidence is Not Newly Discovered

Defendants argue that the Court should reconsider the Rule 33 Denial Order because of newly discovered evidence: police records of the May 1989 burglary, an incident that Juror No. 3 did not remember during the evidentiary hearing. (*See* Dkt. 417-2; Dkt. 417-3). Defendants argue that these records show that "Juror #3 did have some association with people who were involved in major drug dealing and dealers, and burglaries possibly involving the theft of jewelry and guns." (Dkt. 417-1 at ¶ 16). In Defendants' view, "it defies credulity to believe that Juror #3 would have no memory whatsoever concerning this burglary, or the very unusual manner in which he was arrested coming out of Court." (*Id.* at ¶ 12). Based on the evidence, Defendants ask the Court to vacate the judgment and order a new trial, or else reopen the evidentiary hearing regarding Juror No. 3's qualifications to serve on the jury. (*E.g.*, Dkt. 417 at 1).

Defendants must make certain showings in order to justify reconsideration due to newly discovered evidence:

> To ground a motion for reconsideration on the basis of newly discovered evidence, "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching."

*Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l, Inc.*, 666 F. App'x 17, 25 (2d Cir. 2016) (quoting *United States v. International Brotherhood of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).

Defendants' proffered evidence cannot be considered newly available because Defendants have not demonstrated that the evidence was unavailable despite their exercise of due diligence in obtaining the records. *See id.*; *see also United States v. Bohannon*, 247 F. Supp. 3d 189, 194 (D. Conn. 2017) ("The party moving for reconsideration based on the newly discovered evidence must show that the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support." (internal quotation marks and alterations omitted)); *United States v. Posada*, 206 F. Supp. 3d 866, 868 (S.D.N.Y. 2016) ("A motion to reconsider is not [an] opportunity to put forward evidence that [the party] could have, but failed, to provide the Court when the Court initially considered the motion." (internal quotation marks omitted)). Defendants' motions for reconsideration do not explain why they waited until October 25, 2017—more than five months after May 15, 2017, when the Court announced that a hearing was necessary (Dkt. 327), more than four months after June 14, 2017, when the hearing concluded (Dkt. 353), and after Defendants' sentencing proceedings on October 17, 2017 (Dkt. 405; Dkt. 406)— to submit a proper FOIL request for the records of the May 1989 burglary. (*See* Dkt. 417-1 at ¶¶ 7-8 (asserting, in conclusory manner, that the defense was diligent in procurement of records but failing to explain why FOIL request was made in October of 2017); Dkt. 418 at ¶¶ 3-7 (recounting timeline of efforts to procure the records but failing to explain delay); Dkt. 442 at 2-3 (asserting, without explanation, that "[i]t was certainly not through lack of effort on the part of the defense course [sic] that these records were not made available earlier"); Dkt. 443 (failing to address argument that Defendants did not exercise due diligence)).

In fact, Defendants have been consistently not diligent in their efforts to obtain the records relating to the May 1989 burglary. Even though Nix purportedly made a FOIL request to the MCDAO on March 30, 2017, and did not receive a response until June 7, 2017 (Dkt. 417-1 at ¶ 19), Defendants do not explain why they did not follow up during that time. Then, counsel for Nix served the MCDAO with a subpoena for the records relating to the May 1989 burglary in the middle of the two-day evidentiary hearing and set a return date for the next day, allowing the MCDAO just one day to produce the records. (*See* Dkt. 356 at 144). Defendants had no explanation then—and they have no explanation now—as to why they neglected to obtain the records in time for their use at the evidentiary hearing in June of 2017.

Moreover, Defendants have not demonstrated that the proffered evidence is of "such importance that it probably would have changed the outcome" with respect to the Rule 33 Denial Order. *Desarrolladora Farallon S. de R.L. de C.V.*, 666 F. App'x at 25. In rendering its decision, the Court was already aware that there was some evidence that Juror No. 3 was arrested for a home burglary in May of 1989, but as the Court observed, Juror No. 3 testified that he did not remember the arrest, and the incident did not justify a finding of bias against Defendants. (*See* Dkt. 382 at 61-62 & n.30). Now faced with actual evidence of that arrest, the Court would still conclude that Juror No. 3 was not biased against Defendants. The fact that Defendants now have evidence of the arrest does not change the fact that Juror No. 3 testified that he did not remember it. Moreover, even if Juror No. 3 testified inaccurately during the evidentiary hearing concerning this burglary,

as he did with other parts of his criminal history, it would not change the result. As before when the Court denied Defendants' first motion for reconsideration:

> The record is devoid of any proof that Juror No. 3 had "actual bias" against Defendants or intentionally lied to smuggle his way onto the jury. There is still no fact in the record which, had it been elicited during jury selection, would have required the Court to automatically assume Juror No. 3's bias or prejudice against Defendants or in favor of the Government. And there is still no reason to infer Juror No. 3's bias, whether it be from his decades-old criminal history, being a victim of a home robbery 20 years ago, or his family members' alleged criminal records; the Court has rejected the notion that bias must be inferred from Juror No. 3's undisclosed background.

(Dkt. 394 at 12-13). Defendants have not demonstrated why the belatedly offered evidence of the May 1989 burglary justifies a different outcome or a reopening of the hearing, particularly when Defendants had previously submitted that "the juror witness would not have to be recalled" if certain subpoenas seeking records related to the May 1989 burglary were issued. (Dkt. 354 at ¶ 11). Whatever the details are of the May 1989 burglary, the fact remains that Juror No. 3 testified that he did not remember it, it did not result in any conviction, and it does not justify a finding of bias against Defendants. Having observed Juror No. 3 firsthand during the course of the trial and the two-day evidentiary hearing, this Court rejects the notion that Juror No. 3 lied during *voir dire* so as to secure a spot on the jury. Thus, the Court declines to grant the "extraordinary remedy" of reconsideration. *Parrish*, 253 F. Supp. 2d at 715 (citation omitted).

### B.  Defendants Otherwise Do Not Meet the Standard for Reconsideration

Otherwise, Defendants' motion for reconsideration fails to "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. Once

again, Defendants are not entitled to reconsideration merely because they disagree with the outcome of the Rule 33 Denial Order and the Court's determination as to Juror No. 3's alleged bias, as "[a] motion for reconsideration is not a substitute for appeal. Nor is it a second bite at the apple for a party dissatisfied with the court's ruling." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 392, 395 (E.D.N.Y. 2011) (citation and alterations omitted). Accordingly, reconsideration is not warranted.

## V. Conclusion

For the reasons set forth above, the Court denies Defendants' motions (Dkt. 417; Dkt. 418) in their entirety.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 20, 2018
       Rochester, New York