UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                v.

MATTHEW NIX and EARL McCOY,

                Defendants.

**DECISION AND ORDER**

6:14-CR-06181 EAW

## I.    **BACKGROUND**

On March 17, 2017, following a five-week trial, a jury found defendants Earl McCoy ("McCoy") and Matthew Nix ("Nix") (collectively "Defendants") guilty of: Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a); Hobbs Act robbery and attempted robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; brandishing firearms during and in relation to crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(C)(i) and 2; conspiracy to distribute and to possess with intent to distribute marijuana and heroin, in violation of 18 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Dkt. 165; Dkt. 265; Dkt. 266; Dkt. 267). McCoy was further convicted of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2, while Nix was further convicted of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(C)(i) and 2. (Dkt. 165; Dkt. 265; Dkt. 266: Dkt. 267).

On October 17, 2017, the Court sentenced McCoy to 240 months on each of counts 1 (Hobbs Act conspiracy), 3 (attempted Hobbs Act robbery), 5 (attempted Hobbs Act robbery), and 11 (Hobbs Act robbery), each to run concurrent, 60 months on count 7 (conspiracy to possess with intent to distribute, and to distribute marijuana and heroin) to run concurrent, 120 months on count 10 (possession of firearms by a convicted felon) to run consecutive to counts 1, 3, 5, 7, and 11, 5 years on count 8 (possession of a firearm in furtherance of a drug trafficking crime) to run consecutive to counts 1, 3, 5, 7, 10, and 11, and 25 years on each of counts 2, 4, 6, and 12 (each of which is for brandishing firearms during and in relation to a crime of violence), each count consecutive to each other and all other counts, for a total sentence of 135 years.   (Dkt. 406).   The Court sentenced Nix to 240 months on each of counts 1, 3, 5, and 11, each to run concurrent, 60 months on count 7 to run concurrent, 120 months on count 9 (possession of firearms by a convicted felon) to be served consecutive to counts 1, 3, 5, 7, and 11, and 25 years on each of counts 2, 4, 6, 8, and 12, each count consecutive to each other and all other counts, for a total sentence of 155 years.  (Dkt. 405).

Defendants appealed their convictions and sentences to the Second Circuit.  (Dkt. 407; Dkt. 408).  On April 22, 2021, the Second Circuit issued a decision wherein it denied Defendants' motions for a new trial and affirmed their convictions on all counts other than count 2.  (Dkt. 514).  As to count 2, the Second Circuit held that Hobbs Act conspiracy is not a crime of violence under § 924(c) and accordingly reversed Defendants' "convictions on Count 2 for brandishing firearms predicated on Hobbs Act conspiracy." (*Id*. at 4).  The

Second Circuit remanded the matter "for resentencing, and for consideration by the district court of what relief, if any, may be appropriate under the First Step Act [of 2018]." (*Id.*).

## II.   **DISCUSSION**

At the time Defendants were originally sentenced in this action, "a defendant's first § 924(c) conviction carried a mandatory-minimum sentence of five years' incarceration, and each additional § 924(c) conviction carried a sentence of twenty-five years' incarceration, even if the defendant's § 924(c) convictions were part of the same indictment." *United States v. Henry*, 983 F.3d 214, 216 (6th Cir. 2020).  However, the First Step Act of 2018 (the "FSA"), which was enacted on December 21, 2018, "sought to ensure that stacking applied only to defendants who were truly recidivists." *Id.* at 218. More particularly, § 403(b) of the FSA amended § 924(c)(1)(C) "to provide that the 25-year mandatory minimum consecutive sentence would apply not to a 'second or subsequent conviction' but instead to a 'violation of this subsection that occurs after a prior conviction under this subsection has become final.'" *United States v. Eldridge*, 2 F.4th 27, 40 (2d Cir. 2021) (quoting Pub. L. No. 115-391, 132 Stat. at 5222).

Further, "[i]n § 403(b) [of the FSA], Congress departed from the general rule that reductions in criminal penalties are not retroactive" by providing that "[§ 403], and the amendments made by [§ 403], shall apply to any offense that was committed before the date of enactment of [the FSA], if a sentence for the offense has not been imposed as of such date of enactment." *Henry*, 983 F.3d at 219 (citation omitted).  "Congress did not define the terms 'a sentence' or 'imposed' for the purposes of § 403(b)." *Id.*

Following enactment of the FSA, courts have confronted numerous questions regarding the retroactivity provision contained in § 403(b), including: (1) does § 403 apply to defendants who had been sentenced but had not exhausted their appeals when the FSA was enacted; (2) does § 403 apply to defendants whose sentences had been vacated before the FSA was enacted and who were awaiting resentencing; and (3) does § 403 apply to defendants whose sentences are vacated after the FSA's enactment?  *See, e.g., United States v. Jackson*, 995 F.3d 522, 525 (6th Cir. 2021) (answering the third question in the negative), *cert. denied*, 142 S. Ct. 1234 (2022); *United States v. Hodge*, 948 F.3d 160, 164 (3d Cir. 2020) (answering the second question in the negative), *cert. denied*, 141 S. Ct. 347 (2020); *Henry*, 983 F.3d at 222-23 (answering the second question in the affirmative); *United States v. Uriarte*, 975 F.3d 596, 602 (7th Cir. 2020) (answering the second question in the affirmative); *United States v. Cruz-Rivera*, 954 F.3d 410, 413 (1st Cir. 2020) (answering the first question in the negative); *United States v. Jordan*, 952 F.3d 160, 163, 171-74 (4th Cir. 2020) (answering the first question in the negative); *United States v. Gomez*, 960 F.3d 173, 178 (5th Cir. 2020) (answering the first question in the negative); *United States v. Richardson*, 948 F.3d 733, 748-53 (6th Cir. 2020) (answering the first question in the negative); *United States v. Voris*, 964 F.3d 864, 875 (9th Cir. 2020) (answering the first question in the negative).

In *Eldridge*, the Second Circuit considered the first of these questions and held that § 403 does not apply to defendants whose sentences were not yet final at the time the FSA was enacted (*e.g.*, pending on direct appeal), if those sentences are otherwise valid.  2 F.4th at 41.  However, the Second Circuit has not yet answered the third question, which is the

issue presented in the instant case.  *See id*. at 41 n.17 ("We express no opinion, however, on whether Section 403(a) of the First Step Act applies at a defendant's resentencing following vacatur of a defendant's original erroneous sentence, where the First Step Act was enacted after the original sentencing but before resentencing.  Our sister Circuits are divided on this question, and on the question of whether it matters if a defendant's original sentence was vacated before or after the First Step Act was enacted."); *see also United States v. Waite*, 12 F.4th 204, 217 (2d Cir. 2021) ("[I]t is an open question in this Circuit whether the First Step Act's amendments to § 924(c) 'stacking' apply when a defendant is resentenced after a remand from this Court.").  Accordingly, the Court must perform its own interpretation of § 403(b).

The Court's "starting point in statutory interpretation is the statute's plain meaning, if it has one."  *United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020) (quoting *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)), *cert. denied*, 141 S. Ct. 2795 (2021); *see also Mary Jo C. v. New York State & Loc. Ret. Sys*., 707 F.3d 144, 168 (2d Cir. 2013) ("Statutory analysis necessarily begins with the plain meaning of the law's text, and, absent ambiguity, will generally end there." (citation and alteration omitted)).  Here, the relevant statutory language is "if a sentence for the offense has not been imposed as of such date of enactment."  Pub. L. No. 115-391, 132 Stat. at 5222.  The Court's initial task is thus to determine whether there is ambiguity in this language that requires further analysis.

McCoy[1] argues that his vacated sentence "is not a sentence that has been 'imposed' within the meaning of the statute" because "[w]hen a sentence is vacated and remanded, the general, legal understanding is that the original sentence is null and void."  (Dkt. 528 at 3 (quotations omitted)).  The government, on the other hand, contends that "the operative question dictated by § 403(b) is one of historical fact"—namely, had a judgment been entered against Defendants on December 21, 2018?  (Dkt. 531 at 3).  According to the government, "[t]hat historical fact is all that matters under the plain language of § 403(b), regardless of whether that sentence is affirmed or vacated on direct appeal or otherwise modified on collateral review."  (*Id.*).

Having carefully considered the matter, the Court finds that the plain meaning of § 403(b) precludes application of § 403(a) to defendants who were under a sentence that had been imposed as of December 21, 2018, even if that sentence is subsequently vacated. As the Third Circuit has noted, "the First Step Act conditions the reduced mandatory minimum's retroactive application on the imposition of a sentence—not the sentence, an ultimate sentence, or a final sentence.  That word choice matters." *Hodge*, 948 F.3d at 163; *cf. Uriarte*, 975 F.3d at 602 n.3 ("Although Mr. Uriarte, who was sentence-less when the First Step Act was enacted, falls neatly within the statute's language, the same would not be true for a defendant who was under a sentence at the time of enactment, but subsequently had his sentence vacated.").  Further, the Second Circuit has expressly held that "for the

---

[1]    In 2007, Nix was convicted in this District of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).  (*See* Dkt. 398 at ¶ 136). Therefore, the arguments pertaining to the applicability of the FSA's retroactivity provisions are less relevant to Nix.

purposes of Section 403(b), a sentence is 'imposed' when the district court orally pronounces it." *Eldridge*, 2 F.4th at 40.  There can accordingly be no question that, on December 21, 2018, a sentence had been imposed on Defendants in this case.

The Sixth Circuit reached the same conclusion about § 403(b)'s meaning in *Jackson*, applying reasoning that the Court finds persuasive.  *See* 995 F.3d at 524 ("Our task begins with the statutory text. . . .  When, as here, the text is clear, it ends there as well.").  In particular, the *Jackson* court explained that vacatur of a sentence "does not erase [the defendant's] prior sentence from history."  *Id.* at 525.  In other words, while the vacatur voids the prior sentence and "eliminat[es] . . . [its] prospective legal effect," it "does not retroactively change [a defendant's] status in the prior months."  *Id.*

The *Jackson* court further persuasively explained that "[o]n the relevant date for retroactivity," a defendant whose sentence was subsequently vacated on direct appeal "was in the exact same situation as" a defendant whose sentence was subsequently affirmed on direct appeal: "under sentence pending appeal."  *Id.*  "That [the former's] first appeal went better than [the latter's] does not alter [the] inquiry under the [§ 403(b)] retroactivity provision."  *Id.*  This conclusion is consistent with the Second Circuit's holding in *Eldridge* that "[h]ad Congress wanted, it could have applied the revised penalty structure of Section 403(a) of the First Step Act to sentences that were not yet final (including cases . . . still pending on direct appeal).  But it did not do so.  Instead, it keyed the new law to whether the sentence had 'not been imposed' as of the date of the enactment."  2 F.4th at 41.

The *Jackson* court also persuasively addressed the argument that "the First Step Act's amendments should apply to all resentencing hearings that occur after the date of

enactment based on the general principle that a court is to apply the law in effect at the time it renders its decision." 885 F.3d at 526 (quotation omitted). As the *Jackson* court explained, this general principle "applies only when there is no statutory directive to the contrary," and the Supreme Court held in *Dorsey v. United States*, 567 U.S. 260 (2012) that "the general savings statute that has been in place since 1871 provides the statutory directive to the contrary for all statutory changes." 885 F.3d at 526 (citing *Dorsey*, 567 U.S. at 272). Here, while the FSA does have an express retroactivity provision, it is limited to "defendants on whom a sentence had not been imposed as of December 21, 2018." *Id.*

Like the *Jackson* court, this Court is unpersuaded by "the Fourth Circuit's contrary conclusion in *United States v. Bethea*, 841 F. App'x 544 (4th Cir. 2021)." In *Bethea*—an unpublished, nonprecedential decision—the Fourth Circuit considered the meaning of § 401(c) of the FSA. 841 F. App'x at 548. Like § 403(b), § 401(c) provides for retroactive application of certain provisions of the FSA "if a sentence for the offense has not been imposed as of" the date of enactment. *Id.* (quoting Pub. L. No. 115-391, 132 Stat. at 5221). The *Bethea* court found that § 401(c) does not "prohibit application of the FSA to individuals whose sentences have been vacated after the FSA's enactment." *Id.* at 550. The *Bethea* court relied on two primary arguments to reach that conclusion: (1) "Although [it is] true that Congress did not use a phrase such as 'the sentence,' 'the ultimate sentence,' or 'the final sentence'—any one of which would suggest courts look to the latest sentence imposed—neither did it use a phrase such as 'any sentence,' 'the first sentence,' 'the initial sentence,' or 'the original sentence'"; and (2) "if [a defendant's] vacated sentence is a legal

nullity, it matters not when that vacatur occurred, because his only legally effective sentence was imposed after the FSA's enactment." *Id*. at 550-51.

As to the latter of these arguments, the words "legally effective" appear nowhere in § 403(b) (or § 401(c)) of the FSA. It is not the function of a court to "read into statutes words that aren't there," particularly "when Congress has . . . included the term in question elsewhere in the very same statutory provision." *Romag Fasteners, Inc v. Fossil, Inc*., 140 S. Ct. 1492, 1495 (2020). This is such a case—in § 403(a) of the FSA, Congress specifically referenced a "final" conviction. The omission of any such language in § 403(b) strongly cuts against reading in an implicit finality requirement.

As to the latter argument, the Court again agrees with the reasoning in *Jackson*: "[t]he mere observation that the statutory language could be made clearer does not make it unclear in the first place." 995 F.3d at 526. The English language is imperfect, and it is easy, with the benefit of hindsight, for a court to think of ways in which a statute might have been differently phrased. That does not suffice to render an otherwise clear statute ambiguous.

The Court is unpersuaded by McCoy's arguments that: (1) "Congress intended FSA to apply to pre-Act offenders who are being resentenced"; and (2) the rule of lenity supports his position. (Dkt. 528 at 4-5). As to the first of these arguments, McCoy relies on an amicus brief submitted "[i]n a similar pending case in the Ninth Circuit" by three senators,

whom he describes as the principal drafters of Title IV of FSA.  (*Id.* at 4)[2].  However, "the strong presumption that the plain language of the statute expresses congressional intent is rebutted only in rare and exceptional circumstances."  *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11 (2008) (quotations and alteration omitted).  Defendant has identified no such circumstances in this case.  In other words, that the purpose of the FSA may have been to eliminate the 25-year consecutive stacking of § 924(c) convictions contained within the same indictment cannot override the express language chosen by Congress, which conditions retroactivity of the FSA on when a sentence is imposed.

As to the rule of lenity, it is "not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seized every thing from which aid can be derived, it is still left with an ambiguous statute."  *Chapman v. United States*, 500 U.S. 453, 463 (1991) (quotations, citations, and alteration omitted).  Here, for the reasons explained above, the Court does not find § 403(b) of the FSA ambiguous.  Accordingly, the rule of lenity plays no role in its analysis.

The Court is cognizant that some other district judges in the Second Circuit, including at least one judge in this District, have reached a contrary conclusion.  *See United States v. Figueroa*, 530 F. Supp. 3d 437, 444 (S.D.N.Y. 2021); *Acosta v. United States*, No. 1:03-CR-00011-MAT, 2019 WL 4140943, at *8 (W.D.N.Y. Sept. 2, 2019).  The Court expects that the issue will ultimately be resolved by the Supreme Court, in light of the

---

[2]     The case in question is no longer pending before the Ninth Circuit, having been dismissed at the appellant's request on February 22, 2021.  *United States v. Mapuatuli*, No. 19-10233, Dkt. 56 (9th Cir. Feb. 22, 2021).

differing conclusions reached by the Courts of Appeals.  In the meantime, the Court is bound to apply what it views as the correct interpretation of the plain and unambiguous statutory language.  On the date that the FSA was enacted—December 21, 2018—sentences had been imposed with respect to both McCoy and Nix for the § 924(c) counts for which they were convicted.  The fact that the convictions on count 2 have been vacated and the cases remanded back to this Court for resentencing does not alter the historical fact that on December 21, 2018, sentences had been imposed.  Thus, under § 403(b) of the FSA, the reductions in criminal penalties for Defendants' § 924(c) convictions are not retroactive.

## III.  **CONCLUSION**

For the reasons set forth above, the Court finds that § 403(a) of the FSA does not apply to the resentencing of Defendants in this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 31, 2022
      Rochester, New York